**SUNAC PETROLEUM CORPORATION et al., Appellants,**

v.

**Frank PARKES, Appellee.**

**No. 7558.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 7, 1966.

Rehearing Denied March 7, 1966.

Golden, Croley, Howell, Johnson & Mizell, Dallas, for appellants.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellee.

DENTON, Chief Justice.

Suit was brought by Frank Parkes, Appellee, against Sunac Petroleum Corporation (formerly Stekoll Petroleum Corporation) and H. Bruce Calder and Curtis E. Calder, Jr., d/b/a Horizon Oil and Gas Company, and Cactus Petroleum, Inc., to determine whether or not Parkes is entitled to a certain overriding royalty interest out of an oil and gas mineral lease covering a 160 acre tract in Ochiltree County, Texas. The trial court, without a jury, entered judgment decreeing plaintiff below was the owner of the overriding royalty interest prayed for. All defendants, with the exception of the Cactus Petroleum, Inc., have perfected this appeal.

The case was submitted to the trial court on an agreed statement of facts. Parkes was the lessee of an oil and gas mineral lease ·dated April 17, 1948. The lease had a primary term of ten years. On or about May 15, 1957, Parkes assigned said lease to L. H. Puckett and reserved an overriding royalty interest of $\frac{1}{16}$ of $\frac{7}{8}$ of the oil, gas and all casing head gas produced, saved and sold under the lease or any extensions or renewals thereof. Thereafter, and prior to the commencement of the drilling operations hereinafter referred to, the appellants succeeded to all the rights of L. H. Puckett. On April 14, 1958, the appellant, Horizon Oil and Gas Company, along with others, executed a unit designation instrument placing the 160 acre tract together with certain other tracts in a consolidated gas unit. This unit designation purported to pool or unitize the tract for gas only. At the expiration of the primary term of the lease there was no well on the leased land capable of producing gas or oil, but drilling operations were being conducted by the lessee in the consolidated gas unit, though not on the land covered by said lease. These drilling operations resulted in the completion of an oil well as distinguished from a gas well on June 11, 1958. This well continued to produce oil in paying quantities from the date of completion until after the commencement of a second well on June 24, 1958 on the land covered by the lease in question. This latter operation resulted in the completion of a well producing oil in paying quantities on or about July 29, 1958. Oil in paying quantities has been continuously produced by the second well up until the time of the trial. Approximately one year after the completion of the second well, the successors in interest to the lessors under the 1948 lease, raised a question as to whether or not the lease had been maintained in force and effect after the expira-

tion of the primary term until the commencement of drilling operations on the land under lease on June 24, 1958. Thereafter, the appellant secured a new oil and gas lease from the successors in interest to the lessors of the 1948 lease, upon the payment of a cash bonus consideration of $27,000.00. This lease was dated August 17, 1959, and covered the same land described in the 1948 lease. Oil in paying quantities was being produced on the land at the time the lease of 1959 was executed and as stated this production has continued to the time of the trial. It was further agreed that the parties who were entitled to receive royalties under the 1948 lease were the same parties entitled to receive royalties provided for in the 1959 lease; and that Parkes, his survivors, heirs and assigns, are entitled to receive the overriding royalty interest production under the lease of 1959 unless the lease of 1948 ceased to exist as of the effective date of the 1959 lease. The appellants paid or accounted to Parkes for his portion of the production to and including November 30, 1959, but appellants have failed and refused to pay or to account to Parkes for any production after December 1, 1959. Parkes has brought suit against appellants and Cactus Petroleum, Inc., to obtain a judicial determination that his overriding royalty interest under the 1948 lease applied to the lease of August 17, 1959. The trial court entered judgment so declaring Parkes' interest.

The primary question to be decided is whether or not the new lease of August 17, 1959, was an extension or renewal of the original lease of April 17, 1948. Appellants contend the 1948 lease terminated on June 11, 1958, when drilling operations on the gas unit resulted in the production of oil rather than gas; that such lease, having terminated by its own terms, the lease of August, 1959 was not an extension and renewal of the original lease. If this be so, appellee's overriding royalty interest does not apply to the lease of August, 1959. Appellants further urge there was no fiduciary relationship between the parties herein and there-

fore, the court cannot impose a constructive trust for the benefit of appellee on appellants' interest in a new lease. The question to be determined depends to some extent on whether or not the 1948 lease had in fact terminated under its own terms. That question turns upon the construction of Section 5 of the 1948 lease, under the facts of this case. That Section reads as follows:

"If, prior to discovery of oil or gas on said land, lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling or reworking operations within sixty days thereafter or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three months from date of completion of dry hole or cessation of production. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land but lessee is then engaged in drilling or reworking operations thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty consecutive days, and if they result in the production of oil, gas or other minerals; so long thereafter as oil, gas or other mineral is produced from said land."

The language of the above quoted section is identical to the corresponding provisions in the lease in Stanolind Oil and Gas Company v. Newman Brothers Drilling Company, 157 Tex. 489, 305 S.W.2d 169, and the language is substantially identical with the lease in Skelly Oil Company v. Harris, 163 Tex. 92, 352 S.W.2d 950. We think the reasoning and construction placed on these lease provisions by these cases are controlling here. In both the instant case and the *Newman* and *Harris* cases,

there was no production before the primary term expired, but before the end of the primary term the lessees began drilling a well on the land leased or on land making up the pooled unit. In the instant case the drilling operations continued beyond the primary term and continued until the oil well was completed on June 11. Under the plain language of the second sentence of Section 5, the lease was kept in force at least until June 11. We think it is equally clear that when drilling operations resulted in the discovery of oil rather than a dry hole, the first sentence of paragraph 5 would not come into play as in the *Newman* and *Harris* cases. In order to extend the life of the lease by complying with the first sentence of paragraph 5, a lessee must "drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease for any cause". Instead of drilling a dry hole the lessees here completed an oil well on the acreage pooled for gas only. The discovery of oil on land in the gas unit, but not on the land under this lease, did not continue the lease in effect. We are not prepared to hold an oil well completed in a gas unit, as in this case, is the same as a dry hole; however, it could be forcibly argued that the two results have the same legal effect under the facts of this case, in that both a dry hole and an oil well on the gas unit will not serve to extend the lease under Section 2 of the lease. That paragraph is: "subject to the other provisions herein contained, this lease shall be for a term of ten years from this date ('called primary term') and as long thereafter as oil, gas and other mineral is produced from said land hereto".

Appellants take the position that when the first drilling operation resulted in an oil well rather than a gas well, neither the sixty-day clause or the thirty-day clause applies and that the 1948 lease terminated on the date the oil well was completed. They further contend the commencement of the second well on the leased land on June 24 had no effect in extending the 1948 lease. In support of this position, appellants rely primarily on Rogers v. Osborn, 152 Tex. 540, 261 S.W.2d 311. There are several distinguishing facts between that case and the instant case even though the drilling or reworking clauses are identical. In the first place, the first well in the *Rogers* case was completed almost two months prior to the expiration of the primary term; gas was discovered in paying quantities during the primary term but there was no production although the well was subject to "periods flowing". Reworking operations were continued after the primary term but the court held these reworking operations had ceased for more than thirty days, and that the thirty-day clause, could not be satisfied by operations on the second well which were begun forty days after the end of the primary term. In overruling the motion for rehearing in the *Rogers* case, the writer of the majority opinion said:

"The parties here have not raised the question of whether or not under the reworking clause the lease terminated at the end of a thirty-day period of no activity. This question was neither briefed nor argued and was not under consideration in our original opinion".

In discussing the effect of the thirty-day reworking clause in the *Newman* case, the Court said:

"If the lease has been kept in force for the full primary term, and there is no production but the lessee is engaged in drilling or reworking operations at the end of such term, the thirty-day clause applies and will keep the lease alive as long as the particular drilling or reworking operation is prosecuted with no cessation of more than thirty consecutive days. The primary purpose of this provision is to keep the lease in force as long as the drilling or reworking operation is prosecuted with diligence, and a precise yet quite liberal standard of diligence is laid down.

There must be no cessation of the drilling or reworking operation for more than thirty days if the lease is to be kept alive until the operation is completed to production or a dry hole. * * *

"The thirty-day clause does not tell what will happen to the lease if the particular operation, diligently pursued in accordance with its terms, results in a dry hole. In the absence of some other provision which keeps the lease in force, it would terminate. It will be noted, however, that the thirty-day clause does *not* provide either expressly or by implication that a lease which has been maintained beyond the primary term under its provisions can thereafter be kept in force *only* by the diligent prosecution of the particular operation begun during such term."

Although the court gave meaning to both the sixty-day clause and the thirty-day clause under the facts of that case, we are concerned here only with the thirty-day clause.

■ The 1948 lease was maintained beyond its primary term by the drilling of the first well and such operation continued the lease in effect at least until it was completed on June 11. Under the decisions of both *Newman* and *Harris,* the thirty-day clause has the effect, where drilling or reworking prolongs the lease after the primary term, of keeping the lease in force so long as such operations are prosecuted with no cessation of more than thirty days. The *Newman* case specifically held the thirty-day clause does not restrict the drilling operation to the particular operation begun during the primary term. We, therefore, conclude the provisions of the thirty-day clause extended the 1948 lease until July 11, which is thirty days after the completion of the first oil well. The second well was commenced on June 24 on the land covered by this lease, which was within thirty days of the cessation of operations and that operation was prosecuted

continuously until production was obtained. We, therefore, hold the requirements of the thirty-day clause were fully met and the drilling operations prosecuted by appellants and the resulting production kept the 1948 lease in force and was in force and effect at the time the 1959 oil and gas lease was executed. It necessarily follows that the latter lease was an extension and renewal of the 1948 lease; and that the leasehold estate created by the lease of 1959 was burdened with Parkes' overriding royalty interest. In view of this holding, it is not necessary that we discuss or pass on the question of a fiduciary relationship between the parties.

■ If we be mistaken in the above holding, we are of the firm opinion the conduct of the parties, was such that they considered and treated the 1948 lease as remaining in force until it was superceded by the 1959 lease. Under this record we conclude appellants are estopped to deny appellee's claim. This conclusion is inevitable when the stipulated facts are considered. During the period between the time production on the leased premises was obtained until the 1959 lease became effective, the parties entitled to royalties under the original lease were paid or accounted to by the same appellants. In addition, Parkes was paid or accounted to for his overriding royalty from the production from the premises leased under the original lease. This overriding royalty was either paid to or accounted for to Parkes until November 30, 1959, over three months after the 1959 lease became effective and sixteen months after the second well began producing. It is to be further noted there had been no adjudication that the 1948 lease ever terminated and no suit for such adjudication was ever filed. The only evidence in this respect was that approximately one year after completion of the second producing well, the successors in interest to the lessors under the 1948 lease, asserted that a question existed as to whether or not said lease had been maintained in force during the period from

the expiration of the primary term until drilling operations were commenced on June 24, 1958. Thus, only a question was raised and it was raised during the time the lease was in force and effect by virtue of the drilling operations and within the thirty-day cessation period. Appellants and the successors in interest to the lessors received the proceeds of the production under the 1948 lease for the period appellants now say the lease was not in force. If the appellants' position is correct, the land in question was not subject to any lease whatsoever during the period between the termination of the 1948 lease and the effective date of the 1959 lease. If this be true, appellants were not entitled to any of the proceeds of the leasehold estate during that period, but which they admittedly received. We are of the opinion, and so hold for the reasons stated, the new lease of August 17, 1959, was an extension and renewal of the original lease of April 17, 1948; and that the leasehold estate created by the 1959 lease is burdened with appellee's overriding royalty interest.

By cross point, appellee seeks to reform the trial court's judgment so as to decree appellants to be liable jointly and severally to appellee for the proceeds of production represented by his overriding royalty interest since and including December 1, 1959. Although the trial court's judgment established the validity of appellee's overriding royalty interest, the judgment did not expressly decree such liability. The agreed statement of facts provided that in the event the royalty interest reserved by appellee had not terminated, the appellants would be liable jointly and severally to appellee. The judgment of the trial court is accordingly so reformed.

The judgment of the trial court is reformed so as to decree the appellants liable jointly and severally to appellee for his proportionate share of production from December 1, 1959 to the date of judgment and as reformed, the judgment of the trial court is affirmed.